# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>v.<br><br>Rafael Yanez-Chavez,<br><br>                    Defendant. | Case No.: 18-mj-20068-BTM-KSC<br><br>**ORDER AFFIRMING JUDGMENT OF CONVICTION**<br><br>**[ECF NO. 11]** |

      This matter comes before the Court on Defendant Rafael Yanez-Chavez's appeal of the judgment of conviction, entered by Magistrate Judge Karen S. Crawford on July 11, 2018, following his guilty plea to a misdemeanor offense of eluding examination or inspection by immigration officers in violation of 8 U.S.C. § 1325(a)(2) ("§ 1325(a)(2)"). (ECF No. 11.) This appeal, filed on July 25, 2018, is timely, and this Court has jurisdiction under 18 U.S.C. § 3402. *See also* Fed. R. Crim. P. 58(g)(2)(B). Defendant seeks to set aside his plea based on an alleged violation of Federal Rule of Criminal Procedure 11(b)(1)(G). (ECF No. 16 ("Appellant's Opening Br."), 10:1-8.) For the following reasons, the judgment is **affirmed**.

# I. BACKGROUND

**A. Guilty Plea Colloquy**

On July 10, 2018, the government arrested Defendant Rafael Yanez-Chavez, "a Mexican citizen without criminal history, north of the international border and away from a port of entry." (Appellant's Opening Br. 1:2-3.) Mr. Yanez-Chavez was detained overnight at a border-patrol station. (Id. at 1:3-5.) The next day, a complaint was filed charging Defendant with violating 8 U.S.C. § 1325(a)(2). (ECF No. 1 (the "Complaint").) § 1325(a)(2) attaches criminal liability to "[a]ny alien who . . . eludes examination or inspection by immigration officers." 8 U.S.C. § 1325(a)(2).

The morning after his arrest, Mr. Yanez-Chavez met with a defense attorney to go over his case, and he decided to plead guilty. (Appellant's Opening Br. 1:9-11.) On the same day, Magistrate Judge Karen S. Crawford conducted a guilty plea colloquy to determine if Defendant's plea was knowing, voluntary, and intelligent. (Id. at 1:13-14.)

The magistrate judge began the colloquy by informing Mr. Yanez-Chavez and the other defendants present for the group hearing that they were being charged with "illegally entering the United States." (Appellant's Opening Br. Ex. B ("Transcript of Guilty-Plea Colloquy" or "Tr."), 92:22-23.) She then asked the government attorney to state the elements of the charge. (Id. at 92:24-25.) The government attorney stated her position on the elements of § 1325(a)(2):

> The crime you are charged with requires the government to prove beyond a reasonable doubt that you were not a citizen of the United States at the time of the offense, and that you knowingly eluded examination or inspection by immigration officers.

(Id. at 93:1-5.) Counsel for Defendant disagreed with the elements as articulated by the government and stated:

> I believe the elements are, first, that the defendant is an alien; second, that he intentionally eluded examination, which means he

> specifically intended to avoid the examination process by quickness
> and cunning; and third, that he successfully eluded examination,
> which means he crossed into the United States free from official
> restraint at a port of entry.

(Id. at 93:8-15.) Defense counsel then added, "And that's because they've [the United States] specifically charged eluding examination, so I'd ask Your Honor to state the elements as this court interprets them before going forward." (Id. at 93:16-18.)

The court initially denied defense counsel's request to clarify the dispute between the two attorneys, stating:

> Well, I'm not going to do that at this time. I'm just going to assume
> that it is the higher level, and—as you've described it, and let them
> know that if it went to trial, the government would need to prove the
> charge against them, whatever the elements ultimately are
> determined by the trial judge to be.

(Id. at 93:19-24.) Defense counsel, however, again pushed for a resolution of the elements of § 1325(a)(2), arguing:

> Well, Your Honor, I think all these defendants are entitled to know
> what the elements of the offense is, and if the government has a
> different view than I do on that, I think it's the Court's role to
> determine the elements of the offense.

(Id. at 93:25-94:4.) The court responded by requesting a copy of the statute. (Id. at 94:5-6.) After receiving a copy § 1325 and identifying subsection (a)(2), the judge stated:

> The government would need to prove that you are not a citizen of the
> United States, and that you eluded examination or inspection by
> immigration officers. They would need to prove that beyond a
> reasonable doubt. But since you're pleading guilty, the government is
> not required to prove that.

(Id. at 95:3-7.) The court went on to ask each defendant, including Mr. Yanez-Chavez, "do you understand?" (Id. at 95:8-96:11.) Mr. Yanez-Chavez answered,

"Yes." (Id. at 95:20-21.)

At this point, Defendant did not raise any further issues relating to the elements of § 1325 (a)(2) as articulated by the magistrate judge, and the court proceeded with the rest of the colloquy. (See id. at 95-139.) When the court asked defense counsel to state the factual basis for Mr. Yanez-Chavez's plea, counsel stated:

> On July 10, 2018, Mr. Yanez was not a citizen of the United States, he was a citizen of Mexico. And on that date, he entered the United States by crawling—crossing through a hole under the fence, the border fence, approximately half mile east of the Otay Mesa Port of Entry.

(Id. at 116:22-117:2.)

The court asked the government and the defense counsel if they were "satisfied with the factual basis," to which both attorneys said "yes." (Id. at 117:3-9.) The court then asked Mr. Yanez-Chavez if those facts as presented by defense counsel were true, to which he said "yes." (Id. at 117:10-12.) Finally, the court asked Mr. Yanez-Chavez how he would plead, and he said, "guilty." (Id. at 117:13-15.) The court accepted the plea, finding it was made "knowingly and voluntarily with a full understanding of the nature of the charges" and "that there is a factual basis" for the plea. (Id. at 122:22-123:2.) Ultimately, Judge Crawford sentenced Mr. Yanez-Chavez to time served. (Id. at 139:3-12; see also ECF No. 4 ("Judgment as to Rafael Yanez-Chavez").)

**B. Issue Raised on Appeal**

Defendant now brings this appeal, arguing that the court erred in failing to address defense counsel's request to resolve the dispute between the government and Defendant with respect to the elements of § 1325 (a)(2). (See Appellant's Opening Br. 10:1-2.) As a result of this alleged failure, Defendant argues that because "[he] had no way of knowing the nature of the charged offense," the magistrate judge did not fulfill the requirement under Federal Rule

of Criminal Procedure 11(b)(1)(G) to inform Defendant of the nature of the charged offense. (Id. at 10:2-5.) Thus, Defendant argues, this Court must reverse the judgment of conviction because the government will not be able to prove that the magistrate judge's error was harmless under Rule 11(h). (Id. at 10:5-7.)

## II. STANDARD OF REVIEW

The Court reviews de novo the adequacy of the Rule 11 plea colloquy. *United States v. Pena*, 314 F.3d 1152, 1155 (9th Cir. 2003) (citing *United States v. Minore*, 292 F.3d 1109, 1115 (9th Cir. 2002)).

The Court first assesses for error under Federal Rule of Criminal Procedure 11(b)(1)(G). *See* Fed. R. Crim. P. 11(b)(1)(G) ("Before the court accepts a plea of guilty . . . the court must inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which defendant is pleading.").

Based on whether there is a finding of error, the Court next considers if that error warrants reversal of Defendant's conviction. *See* Fed. R. Crim. P. 11(h) ("A variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights."); *see also United States v. Aguilar-Muniz*, 156 F.3d 974, 976 (9th Cir. 1998) (citing Fed. R. Crim. P. 11(h)) ("Technical failure to comply with Rule 11 is not reversible error unless it affects the defendant's substantial rights.").

## III. DISCUSSION

The Court considers whether there was Rule 11 error and concludes there was not. The Court next determines that even if there had been error, reversal is not required because the Defendant's substantial rights were not affected.

### A. No Error Under Federal Rule of Criminal Procedure 11(b)(1)(G)

Before accepting a guilty plea, Federal Rule of Criminal Procedure 11(b)(1)(G) requires that the court must "[1] inform the defendant of, and [2]

determine that the defendant understands [the nature of the charge.]" *United States v. Covian-Sandoval*, 462 F.3d 1090, 1095 (9th Cir. 2006) (brackets in original). To inform a defendant of the nature of the charge, the court must "advise the defendant of the elements of the crime," and "[d]ue process requires that the defendant be informed of the 'critical' elements of the offense." *Minore*, 292 F.3d at 1115. In *Minore*, the Ninth Circuit explained:

> An explanation of the elements of the charge helps to assure that the defendant fully appreciates the nature of the offense to which the plea is tendered. Since a guilty plea is a formal admission of all elements of the charge, a defendant, in fairness, should be formally advised of the elements before the plea is accepted.

(*Id.*) (quoting 5 Wayne R. LaFave et al., Criminal Procedure § 21.4(c) (4th ed. 2017)).

Defendant was charged with § 1325(a)(2), which attaches criminal liability to "[a]ny alien who . . . eludes examination or inspection by immigration officers." 8 U.S.C. § 1325(a)(2). Before asking Defendant how he would plead at the guilty plea colloquy, the court asked the government to state the elements of the crime, and the attorney provided the following: (1) Defendant is not a citizen of the United States at the time of the offense; and (2) Defendant "*knowingly* eluded examination or inspection by immigration officers." (See Tr. 93:1-5 (emphasis added).) Then, defense counsel rendered her understanding of the elements: (1) "Defendant is an alien"; (2) "Defendant *intentionally* eluded examination, which means he *specifically intended* to avoid the examination process by quickness and cunning"; and (3) "Defendant successfully eluded examination, which means he crossed into the United States free from official restraint *at a port of entry*." (See id. at 93:8-15 (emphasis added).) Defendant's statement of the elements thus raised two questions for the court: First, is the mens rea for the act of eluding examination or inspection by immigration officers "knowingly" or "intentionally," and second, must the act take place at a port of entry?

6

In order for the court below to have met the requirements under Rule 11(b)(1)(G), it must have resolved these questions and ensured that Defendant understood the resolution. This Court finds both requirements adequately fulfilled.

### 1. Defendant Was Informed of the Nature of the Offense

When defense counsel requested that the court clarify the elements of the crime for Defendant, (id. at 93:16-18, 93:25-94:4), the magistrate judge provided that:

> The government would need to prove that you are not a citizen of the United States, and that you eluded examination or inspection by immigration officers. They would need to prove that beyond a reasonable doubt. But since you're pleading guilty, the government is not required to prove that.

(Id. at 95:3-7.) The question for this Court then is whether this suffices to "inform the defendant of . . . [the nature of the charge.]" *Covian-Sandoval*, 462 F.3d at 1095 (brackets in original). The Court holds that it does, because the nature of § 1325(a)(2) is clear from the face of the statute itself. Thus, in faithfully relaying to Defendant the text of the statute, the magistrate judge resolved for the parties that the mens rea is "knowingly," and that the actus reus need not take place at a port of entry.

#### a. Mens Rea

The Ninth Circuit has held that the mens rea of "knowingly" "normally signifies a requirement of general, not specific, intent." *United States v. Sneezer*, 900 F.2d 177, 179 (9th Cir. 1990). A general intent crime "requires only that the act was volitional (as opposed to accidental), and the defendant's state of mind is not otherwise relevant." *United States v. Lamott*, 831 F.3d 1153, 1156 (9th Cir. 2016). In contrast, a specific intent crime requires that "the defendant subjectively intended or desired the proscribed act or result." *Id.*

To determine whether § 1325 (a)(2) is a general or specific intent crime, the

Court first looks to the text of the statute for guidance, *see id.*, and more precisely, to the word "elude," as the source of the actus reus of the crime. When examining a word in a statute, the Court "construe[s] the term in accordance with its ordinary, contemporary, common meaning." *United States v. Millis*, 621 F.3d 914, 917 (9th Cir. 2010) (internal quotations and citations omitted). In so doing, the Court turns to the dictionary definition. *Id.* Webster defines "elude" in the following ways: "to avoid slyly or adroitly (as by artifice, stratagem, or dexterity): evade" and "to escape the notice or perception of." *Elude,* Webster's New International Dictionary (3d ed. 1961). Applying those definitions here, it is clear that "elude" requires a volitional act of evasion. However, nothing in the definition indicates that "elude" also carries with it an intent to achieve a proscribed result. Neither does the wording of the statute operating as a whole denote that the offense requires proof of a specific intent, since there is no language referencing the intention of the defendant. *See United States v. Meeker*, 527 F.2d 12, 14 (9th Cir. 1975) (noting that statutory language akin to "with the intent to" is an indication of a specific intent crime). Accordingly, the plain language of the statute sufficed to inform Defendant that the mens rea of § 1325(a)(2) is "knowingly."

### b. Port of Entry

The Court also finds it clear from the text of the statute that there is no requirement that the offense take place at a port of entry. The Ninth Circuit has adopted the principle that an interpretation of a statute should "carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement." *United States v. Miguel*, 49 F.3d 505, 509 (9th Cir. 1995) (quoting Henry Hart and Albert Sacks, *The Legal Process: Basic Problems in the Making and Application of Law* 1411 (Cambridge Univ. Press tent. ed. 1958)). To read into § 1325 (a)(2) a limitation that the conduct occur at

a port of entry would be giving the words of the statute "a meaning they will not bear."

Thus, the Court finds it clear from the text of the statute that there is no intent requirement and that liability is not limited to conduct at a port of entry. Accordingly, the Court is in agreement with the other courts in this district that have reached the same outcome. *See, e.g.*, *United States v. Sanchez-Mendoza*, No. 18-mj-2224-BGS-DMS, 2018 WL 4002094 (S.D. Cal. Aug. 22, 2018); *United States v. Ochoa-Delgado*, No. 18mj3457 AJB, 2018 WL 4002712 (S.D. Cal. Aug. 22, 2018); *United States v. Chavez-Castillo*, No. 18mj2653 WQH, 2018 WL 3833441 (S.D. Cal. Aug. 13, 2018). Because the meaning of the statute is plain from the text, the magistrate judge properly informed Defendant of the nature of § 1325 (a)(2) by relying on the text as a way to resolve the dispute that defense counsel raised as to the elements of the crime.

## 2. Defendant Understood the Nature of the Offense

Rule 11(b)(1)(G) also requires the court to "determine that the defendant understands [the nature of the charge.]" *Covian-Sandoval*, 462 F.3d at 1095 (brackets in original). Here, before accepting Defendant's guilty plea, the court requested that Defendant state the factual basis for the plea. In response, defense counsel stated:

> On July 10, 2018, Mr. Yanez was not a citizen of the United States, he was a citizen of Mexico. And on that date, he entered the United States by crawling—crossing through a hole under the fence, the border fence, approximately half mile east of the Otay Mesa Port of Entry.

(Tr. 116:22-117:2.) Both attorneys agreed that they were satisfied with this factual basis, and when the court asked Mr. Yanez-Chavez whether those facts were true, he replied that they are. (Id. at 117:3-12.) Next, Mr. Yanez-Chavez pled "guilty" to § 1325(a)(2) (id. at 117:13-15), and the court accepted the plea, finding it was made "knowingly and voluntarily with a full understanding of the

9

18-mj-20068-BTM-KSC

nature of the charges" and "that there is a factual basis" for the plea (id. at 122:22-123:2). The Court finds that this exchange reflects that the magistrate judge adequately determined that Defendant understood the elements of § 1325(a)(2). Defendant admitted to crawling through a hole under the border fence. It is clear from this fact that Defendant understood at the time of the offense that he was eluding examination or inspection by immigration officers. Defendant disregarded the obvious purpose of the fence to prevent unauthorized entry, and Defendant understood that crawling through a hole was not proper entry. The Court finds that when Defendant confirmed for the magistrate judge that the factual basis for the plea was true, the court had fulfilled its obligation of ensuring that Defendant understood the nature of § 1325(a)(2).

Because the magistrate judge both sufficiently informed Defendant of the elements of § 1325(a)(2) and determined he understood the nature of the crime to which he pled guilty, the Court holds that there was no error under Federal Rule of Criminal Procedure 11(b)(1)(G).

### B. Any Error Would Be Harmless

Notwithstanding the finding that there was no error below, the Court determines that even if the lower court had erred in informing Defendant about the nature of the offense, the judgment of conviction does not require reversal because any error did not affect Defendant's substantial rights.

### 1. Harmless Error Versus Plain Error

The parties disagree over whether the Court must review any Rule 11 error for harmless error or plain error. The disagreement lies with the question of whether Defendant sufficiently raised objections to the adequacy of the magistrate judge's explanation of the nature of the charged offense under Rule 11(b)(1)(G). In the Ninth Circuit, "[t]he harmless error standard applies to errors preserved by objections raised during a plea proceeding," *United States v. Aguilar-Vera*, 698 F.3d 1196, 1200 (9th Cir. 2012). The plain error standard, on

the other hand, applies to errors that "[Defendant] did not raise below," *Minore*, 292 F.3d at 1117.

Defendant argues that the Court should review for harmless error because defense counsel preserved a claim of error during the proceeding by requesting that the magistrate judge resolve the dispute that arose between the parties as to the elements of § 1325 (a)(2). (Appellant's Opening Br. 12:18-21.) The government, however, argues that the Court should review for plain error. (ECF No. 17 ("Gov't's Answering Br."), 3:15-23.) The government argues:

> After the magistrate judge read § 1325(a)(2) to Defendant and confirmed that he understood, Defendant proceeded with pleading guilty as charged. Because Defendant did not object to proceeding with the plea, or give any indication that he did not understand the charge, review is for plain error.

(Id.)

The text of Federal Rule of Criminal Procedure 51(b), "Preserving a Claim of Error" reads: "A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection . . . ." Fed. R. Crim. P. 51(b). The Ninth Circuit has explained:

> The principal reason we require parties to raise an issue in the [lower] court is to give that court an opportunity to resolve the matter and, hopefully, avoid error. Also, when matters are first raised in the trial court, it's possible to develop the record as needed to present the issue properly on appeal.

*In re Perez*, 30 F.3d 1209, 1213 (9th Cir. 1994).

The Court holds that Defendant properly preserved a claim of Rule 11 error during the guilty plea colloquy. After the government provided its understanding of the elements of § 1325 (a)(2), defense counsel interjected with Defendant's view of the elements and then asked the magistrate judge to "state the elements as this court interprets them before going forward." (Tr. 93:16-18.) This was

clearly a request intended to inform the court that, first, the parties disputed the § 1325 (a)(2) elements and, second, Defendant needed the court to resolve the dispute before he could plead guilty or not guilty. The magistrate judge at first denied Defendant's request, stating, "Well, I'm not going to do that at this time. I'm just going to assume that it is the higher level, and—as you've described it . . . ." (Id. at 93:19-24.) Consequently, defense counsel again pressed the court to resolve the dispute, arguing, "I think all these defendants are entitled to know what the elements of the offense is, and if the government has a different view than I do on that, I think it's the Court's role to determine the elements of the offense. (Id. at 93:25-94:4.) Here, Defendant for the second time made clear that the parties had different views of the elements of § 1325 (a)(2) and requested that the court provide clarification.

The transcript reflects that Defendant has met the requirements of preserving his claimed Rule 11 error. Defendant twice "inform[ed] the court . . . of the action [he] wish[ed] the court to take." *See* Fed. R. Crim. P. Rule 51(b). Moreover, Defendant "g[a]ve that court an opportunity to resolve the matter and, hopefully, avoid error" as well as "develop[ed] the record as needed to present the issue properly on appeal." *In re Perez*, 30 F.3d at 1213. Whether the magistrate judge's next action sufficiently avoided error is the question in this appeal, but Defendant's *claim* of error is certainly preserved in the transcript. Thus, any Rule 11 error is reviewed under the harmless error standard.

### 2. Harmless Error

Under Federal Rule of Criminal Procedure 11(h), "[a] variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h). The harmless error analysis places the burden on the government to show that the lower court's "Rule 11 error was minor or technical, or the record must affirmatively show that the defendant was aware of the rights at issue when he entered his guilty plea." *Minore*, 292 F.3d at 1119; *see also*

*United States v. Graibe*, 946 F.2d 1428, 1433-34 (9th Cir. 1991) (stating that "[t]he harmless error clause of Rule 11 requires courts to uphold guilty pleas when there has been only a *minor* or *technical* violation of Rule 11" and that "Rule 11 is designed to ensure that the defendant is aware of his fundamental rights before he pleads guilty") (emphasis in original).

The Court finds that any error under Rule 11(b)(1)(G) had no effect on Defendant's substantial rights. Any error was harmless, because the record reflects that Mr. Yanez-Chavez was aware of his rights when he pled guilty. Even if Defendant did not receive a sufficient explanation of the elements of § 1325(a)(2), he "unequivocally admitted . . . during his plea colloquy" that he understood the elements as he admitted to crawling through a hole under the border fence. *See Minore*, 292 F.3d at 1120. Based on this Court's interpretation of the statute as discussed above, and taking into account Ninth Circuit case law on point, Mr. Yanez-Chavez is guilty of illegal entry under § 1325(a)(2), because he knowingly eluded examination or inspection by immigration officers. *See United States v. Rincon-Jimenez*, 595 F.2d 1192, 1193-94 (9th Cir. 1979) (stating that defendant entered illegally under § 1325(a)(2) because when "he did not enter at an officially designated border checkpoint, he never presented himself for medical examination and inspection required of all entering aliens."). Thus, reversing the judgment of conviction is not warranted, because any Rule 11 error would not have affected the outcome in this case.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **affirms the judgment of conviction.** IT IS SO ORDERED.

Dated: December 10, 2018

_____
Barry Ted Moskowitz, Chief Judge
United States District Court

14

18-mj-20068-BTM-KSC